IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TAIWAN OLIPHANT and ANGELA OLIPHANT, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Cause No.: |
| AMERISTAR CASINO ST. CHARLES, LLC, | ) ) | **JURY TRIAL DEMANDED** |
| Serve: CSC-Lawyers Incorporating Service Company 221 Bolivar St. Jefferson City, MO 65101 | ) ) ) ) ) | |
| Defendant. | ) | |

## <u>COMPLAINT</u>

Plaintiffs Taiwan Oliphant and Angela Oliphant ("Plaintiffs"), by and through their counsel, for their Complaint against Ameristar Casino St. Charles, LLC ("Defendant"), hereby state:

## <u>JURISDICTION AND VENUE</u>

1. This Court has jurisdiction over this action pursuance to 28 U.S.C. § 1332. There is complete diversity among the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

2. Venue is proper in this Court under 28 U.S.C. § 139l(b)(2) because a substantial part of the events or omissions occurred in this district.

## <u>PARTIES</u>

3. Plaintiffs Taiwan Oliphant and Angela Oliphant, a married couple, are individuals residing in St. Louis, County, Missouri.

4.      Defendant is a Missouri limited liability company organized and existing under the laws of Missouri and is authorized to, and does, operate a business in Missouri, including a casino in St. Charles County, Missouri. The sole member of Defendant, Boyd TCIV, LLC, is considered a citizen of Nevada because its sole member, Boyd Gaming Corporation, is a citizen of Nevada.

5.      Defendant, at all times relevant herein and upon information and belief, owned, possessed, controlled, and/or operated the premises known as Ameristar Casino St. Charles located at 1 Ameristar Blvd., St. Charles, Missouri ("the Casino").

## FACTUAL BACKGROUND

6.      Plaintiff Taiwan Oliphant ("Mr. Oliphant") is a 49 year old male.

7.      On or about September 20, 2025,  in the early evening, Mr. Oliphant, a business invitee, was playing at a roulette table at the Casino. At that time, he felt something wet dripping from above on his person.

8.      Mr. Oliphant alerted an employee of the Casino of the dripping moisture. That employee alerted a second employee of the dripping moisture. The second employee proceeded to place a nearby bucket under the dripping moisture.

9.      Mr. Oliphant was exposed to Legionella bacteria from the moisture dripping from above him at the Casino.

10.      Within several days of his visit to the Casino, Mr. Oliphant began to feel ill. He suffered a fever and his health progressively deteriorated.

11.      On October 1, 2025 my Oliphant and his wife went to an urgent care clinic. At that juncture, Mr. Oliphant was gravely ill.

12.      From the urgent care clinic, Mr. Oliphant was transported by ambulance to a hospital.

13.     At the hospital, Mr. Oliphant, who was suffering from pneumonia, was diagnosed with Legionnaires disease. He was treated with intravenous antibiotics.

14.     Mr. Oliphant was discharged from the hospital on October 3, 2025.

15.     As a direct result of contracting Legionnaires disease, Mr. Oliphant sustained serious and permanent damage to his liver and kidneys. His medical treatment is ongoing.

16.     Upon information and belief, Mr. Oliphant contracted Legionnaires' disease at the Casino, as a result of which he became seriously ill, incurred significant medical bills, lost wages and earning capacity, endured pain and suffering, and loss of life's pleasures.

17.     Mr. Oliphant has been unable to work since his illness.

### COUNT I — NEGLIGENCE

18.     Plaintiff repeats and realleges each and every allegation above as if set forth in full herein.

19.     Defendant, as owner/operator of the premises, was responsible for the inspection, repair, and maintenance of its water system, including but not limited to its bathtubs, whirlpools, heating, hot water, ventilation, internal and external spas and hot tubs and air conditioning systems at its premises (hereinafter "systems") and for all of its operating systems, particularly those systems which affected its invitees.

20.     It was the duty of the Defendant as possessor of the premises to exercise due care in the maintenance of the aforementioned systems and premises in a reasonably safe manner so as not to subject invitees which it had invited to its premises to unreasonable risks of harm and to warn its invitees of any unreasonable risks of harm.

21.    Defendant breached its duty to Mr. Oliphant in the following respects when defendant knew or should have known that its acts and omissions created an unreasonable risk of harm to its invitees:

a.    In failing to adequately inspect its premises and its systems for dangerous conditions including, but not limited to the presence of Legionella;

b.    In failing to adequately inspect, monitor, and maintain its systems when such inspections, monitoring, and maintenance would have discovered the presence of Legionella;

c.    In failing to properly train and supervise its employees and others to whom it entrusted the care and maintenance of its systems and in particular to recognize the presence of Legionella and danger to those who come in contact with Legionella;

d.    In failing to adopt, enact, employ, and enforce proper and adequate maintenance programs, precautions, procedures, measures, and plans for the detection of Legionella in its systems;

e.    In failing to warn its invitees of the presence of Legionella;

f.    In violating and failing to comply with federal, state, and local rules, regulations, and ordinances applicable to the operation of the hotel and its systems

g.    In failing to perform and furnish services in conformity with the standard of care then and there prevailing in the hotel industry when such service would have disclosed the presence of Legionella;

h.    In failing to have in force an inspection program of its systems when such inspection would have disclosed the presence of Legionella;

i.    In failing to take any appropriate action to correct the presence of Legionella after it was notified of the presence of Legionella at its premises;

j.    In breaching its duty to provide a reasonably safe environment for its invitees; and,

k. As the owner/operator of the Casino, Defendant owed a non-delegable duty to provide a safe place for all invitees including, but not limited to, Mr. Oliphant.

22. The contraction of Legionnaires' disease is an event that does not normally occur in the absence of negligence. Plaintiffs therefore invokes the doctrine of res ipsa loquitur.

23. As a direct and proximate result of Defendant's breaches of the above-listed standards of care, Mr. Oliphant became very ill and suffered serious and permanent injuries and harm. Mr. Oliphant also had loss of income and other incidental expenses. Mr. Oliphant has incurred substantial medical expenses and will incur future medical expenses for care and treatment related to the serious disease or illness he contracted at the Casino.

WHEREFORE, Plaintiff Taiwan Oliphant requests the Court enter a judgment against Defendant Ameristar Casino St. Charles, LLC in an amount to be proved later at trial but exceeding $75,000, plus pre-judgment and post-judgment interest, and whatever further relief is just and proper in the premises.

### Count II– Negligence Per Se

24. Mr. Oliphant repeats and realleges each and every allegation above as if set forth in full herein.

25. At all relevant times, Defendant was subject to mandatory statutes, regulations, and codes enacted to protect public health and safety and to prevent the growth and transmission of *Legionella* bacteria in commercial facilities open to the public, including but not limited to the following:

a. Missouri Revised Statutes § 192.300 and § 192.320, which authorize the Missouri Department of Health and Senior Services ("MDHSS") and local health authorities to promulgate and enforce sanitary rules and regulations to

5

prevent the spread of communicable diseases and conditions dangerous to public health;

b. 19 C.S.R. 20-20.010 et seq. and related MDHSS sanitation and communicable disease control regulations requiring owners and operators of public accommodations to maintain premises in a sanitary condition and to abate health hazards;

c. St. Charles County public health regulations and ordinances, adopted pursuant to Chapter 192, RSMo, requiring commercial establishments to maintain building systems, including HVAC and water systems, so as not to create or contribute to a public health nuisance or disease outbreak;

d. Applicable building, mechanical, and plumbing codes adopted and enforced in St. Charles County and by the State of Missouri, including provisions requiring proper operation, inspection, cleaning, and maintenance of HVAC systems, cooling towers, and water systems to prevent unsafe or unsanitary conditions;

e. ASHRAE Standard 188 (Legionellosis: Risk Management for Building Water Systems), which establishes minimum risk-management requirements for building water systems and which is widely recognized, incorporated by reference, or relied upon by state and local authorities as the applicable standard of care for Legionella prevention;

f. CDC Legionella prevention guidance, which, while issued as guidance, is expressly relied upon by MDHSS and local health authorities in identifying, investigating, and preventing Legionnaires' disease outbreaks and is incorporated into enforcement actions and public health determinations.

6

27.     The statutes, regulations, codes, and standards identified above were enacted and adopted for the specific purpose of protecting patrons and invitees of commercial establishments from preventable exposure to waterborne pathogens, including *Legionella*, and to prevent outbreaks of Legionnaires' disease.

28.     Mr. Oliphant is a member of the class of persons these statutes, regulations, and codes were intended to protect, namely members of the public lawfully present at commercial establishments such as Defendant's casino.

29.     Defendant violated one or more of the foregoing statutes, regulations, and codes by, among other things:

a.  Failing to properly inspect, clean, disinfect, and maintain its HVAC, cooling tower, and/or water systems;

b.  Allowing conditions conducive to *Legionella* growth, including stagnation, biofilm accumulation, improper water temperatures, and inadequate disinfection;

c.  Failing to implement and follow an effective water management program consistent with ASHRAE Standard 188;

d.  Creating or allowing a public health nuisance or unsanitary condition to exist on the premises; and,

e.  Failing to timely remediate known or reasonably discoverable risks associated with *Legionella* contamination.

30.     Defendant's violations of the above-referenced statutes, regulations, and codes constitute negligence per se under Missouri law, in that Defendant breached duties imposed by law rather than merely by common-law standards of care.

7

31.    Defendant's negligence per se was a direct and proximate cause of Mr. Oliphant contracting Legionnaires' disease and suffering the injuries and damages alleged herein.

32.    As a direct and proximate result of Defendant's breaches of its duty of care, Mr. Oliphant became very ill and suffered serious and permanent injuries and harm. Mr. Oliphant also had loss of income and other incidental expenses. Mr. Oliphant has incurred substantial medical expenses and will incur future medical expenses for care and treatment related to the serious disease or illness he contracted at the Casino.

WHEREFORE, Plaintiff Taiwan Oliphant requests the Court enter a judgment against Defendant Ameristar Casino St. Charles, LLC in an amount to be proved later at trial but exceeding $75,000, plus pre-judgment and post-judgment interest, and whatever further relief is just and proper in the premises.

### Count III – Loss of Consortium

33.    Plaintiff Angela Oliphant repeats and realleges each and every allegation above as if set forth in full herein..

34.    Plaintiff Angela Oliphant was at all relevant times the spouse of Plaintiff Taiwan Oliphant.

35.    As a result of Defendant's actions described above, Plaintiff Angela Oliphant has suffered and will continue to suffer a loss of companionship, support, and services of Plaintiff Taiwan Oliphant. She also suffered emotional distress.

WHEREFORE, Plaintiff Angela Orr requests the Court enter a judgment against Defendant in an amount to be proved later at trial but exceeding $75,000, plus pre-judgment and post-judgment interest, and whatever further relief is just and proper in the premises.

JURY TRIAL DEMANDED

**BUTSCH ROBERTS & ASSOCIATES LLC**

By: */s/ David T. Butsch*
　　David T. Butsch #37539
　　Christopher E. Roberts #61895
　　7777 Bonhomme Avenue, Suite 1300
　　Clayton, MO 63105
　　(314) 863-5700 (telephone)
　　(314) 863-5711 (fax)
　　butsch@butschroberts.com
　　roberts@butschroberts.com